UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GARY KREMEN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL JOSEPH COHEN, an individual; and FNBPAY CORPORATION, an Arizona corporation,<br><br>　　　　　　Defendants. | Case No.: 5:11-cv-05411-LHK<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

Plaintiff Gary Kremen ("Kremen" or "Plaintiff") filed this action on November 8, 2011 under California's Uniform Fraudulent Transfer Act ("CUFTA"), Cal. Civ. Code §§ 3439.04, 3439.07, 3440, against Defendants Michael Joseph Cohen ("M. Cohen") and FNBPay Corporation ("FNBPay"), a corporation incorporated under the laws of the State of Arizona (collectively "Defendants"), upon information and belief that Defendants are the transferees of certain property, including money, fraudulently transferred to each of them by Stephen Michael Cohen ("S. Cohen" or "Judgment-Debtor"), an individual against whom Plaintiff has an enforceable and unpaid money judgment, obtained for $65,000,000 on April 3, 2001 in the U.S. District Court for the Northern District of California, and renewed on March 22, 2011 by the same court in the amount of $67,867,053.36 (the "Renewed Judgment"). On December 2, 2011, Plaintiff filed an *ex parte* motion seeking a temporary restraining order ("TRO") freezing certain assets "to prevent the

1

dissipation of more than $109,000 that is currently being held at Wells Fargo Bank (Account No. 2806354318) [(the "Wells Fargo Account")] under the name FNBPay." *Ex Parte* Motion for Temporary Restraining Order ("TRO Mot.") at 2. The Wells Fargo Account held in Defendants' possession is alleged to be the vehicle for the alleged fraudulent transfers from S. Cohen.

For good cause shown, the Court granted the TRO on December 7, 2011, granted Plaintiff's request for limited expedited discovery, and issued an Order to Show Cause ("OSC") setting a briefing schedule and hearing date on Plaintiff's motion for preliminary injunction enjoining Defendants from disposing of funds held in the Wells Fargo Account.[1] *See* ECF No. 16. However, the Court also requested supplemental briefing on whether this Court has personal jurisdiction over Defendants and whether venue in this district is proper. Defendants answered the OSC on December 20, 2011, *see* ECF No. 38,[2] and both sides submitted supplemental briefing on personal jurisdiction and venue, *see* ECF Nos. 21, 40, 58. In addition, Defendants filed a Motion to Dismiss for Lack of Jurisdiction and Improper Venue, or, in the alternative, a Motion to Transfer to the District of Arizona pursuant to 28 U.S.C. § 1404.[3] *See* ECF No. 31. Plaintiff filed an opposition to the motion to dismiss, *see* ECF No. 46, and Defendants filed a reply, *see* ECF No. 62.

---

[1] The Court revised this briefing schedule on December 15, 2011 to allow Defendants additional time for briefing. *See* ECF No. 30.

[2] On December 27, 2011, Defendants also filed, without the Court's permission, a "Supplemental Brief in Opposition to Ex Parte Motion for Temporary Restraining Order, Order to Show Cause re: Preliminary Injunction and for an Order Expediting Discovery; Motion to Quash Service on Both the Subpoena and the Request for Production of Documents and His Request for Sanctions; Motion for Referral to the Court's Standing Committee of Professional Conduct and His Request for Court Ordered Sanctions; and Motion Requiring Plaintiff Gary Kremen's [sic] to Post a Five Million Dollar Bond Pursuant to the California Civil Code of Procedures Section 1030." ECF No. 59. This unauthorized sur-reply does not comply with Civil Local Rule 7-3(d) and is therefore STRICKEN.

[3] Although Defendants' motion is titled "Motion Under Federal Rules of Civil Procedures Rule 12(b)2, 3, 5, and 6 to Dismiss for Lack of Jurisdiction, Improper Venue and Insufficient Service of Process or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1404 to the District of Arizona," Defendants do not discuss the basis for their purported motions to dismiss pursuant to Rules 12(b)(5) (insufficient service of process) or 12(b)(6) (failure to state a claim upon which relief can be granted) anywhere in the body of their memorandum of points and authorities. *See* ECF No. 32. Accordingly, the Court has no basis on which to adjudicate the merits of these asserted grounds for dismissal and therefore deems those motions waived.

The Court held a hearing on the motion for preliminary injunction on January 5, 2012, at which only Plaintiff appeared. Pursuant to Civil Local Rule 7-1(b), the Court finds Defendants' motion to dismiss or transfer appropriate for determination without oral argument and accordingly VACATES the hearing scheduled for April 5, 2012.[4] Having considered the parties' submissions and the relevant law, the Court hereby DENIES Defendants' motion to dismiss or to transfer, and DENIES Plaintiff's motion for a preliminary injunction. The TRO previously granted expires effective upon the date of this Order.[5]

## I. BACKGROUND[6]

Plaintiff is an internet entrepreneur who obtained a $65 million judgment (the "Judgment") in the United States District Court for the Northern District of California against S. Cohen and S. Cohen's alter ego entities on April 3, 2001, for fraudulently converting the internet domain name, www.sex.com. *See* Pl.'s Request for Judicial Notice (ECF No. 5-6) ("RJN") Ex. 1; Declaration of Timothy P. Dillon in Support of Motion for TRO ("Dillon Decl.") ¶ 4; *see also Kremen v. Stephen Michael Cohen*, 337 F.3d 1024, 1026-27 (9th Cir. 2003) (describing the factual background

---

[4] Defendants' *Ex Parte* Motion to Shorten Time for Defendants' Motion to Dismiss or Transfer (ECF No. 47) is accordingly DENIED as moot.

[5] Defendants' Emergency *Ex Parte* Motion to Cancel the Temporary Restraining Order Pending Hearing on Defendants' Motion to Dismiss or Transfer (ECF No. 52) is accordingly DENIED as moot.

[6] Defendants have filed multiple requests for judicial notice. Although Defendants do not submit these requests in connection with any particular motion, *see* ECF Nos. 42, 53, 54, 55, 56, the Court construes them as requests for judicial notice of documents in connection with Defendants' motion to dismiss. A matter may be judicially noticed if it is either "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Requests for Judicial Notice Dkt No. 53 and Dkt No. 42 are identical and seek judicial notice of documents filed and an order issued in another case in this district, *Kremen v. Stephen Michael Cohen*, No. C98-20718-JW. Because judicial notice may be taken of court records, the Court GRANTS Defendants' request as to ECF No. 53. However, Requests for Judicial Notice Dkt Nos. 54, 55, and 56 seek judicial notice of declarations of various individuals. These declarations are not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), and therefore the Court DENIES Defendants' requests as to ECF Nos. 54, 55, and 56.

between Kremen and S. Cohen common to this case); *Kremen v. Jhuliana Aramis Cohen*, No. 05-cv-01319-JM (POR), 2007 WL 1875779 (S.D. Cal. June 28, 2007) (same).

Plaintiff filed his underlying suit against S. Cohen in July 1998. On November 27, 2000, the district court granted Plaintiff's motion for a preliminary injunction and ordered S. Cohen to transfer the www.sex.com domain name back to Kremen, repatriate $25,000,000.00 that S. Cohen had sent to offshore accounts, sign waivers for the release of tax returns and bank account records, and sign FOIA waivers. *See* RJN Ex. 2. After S. Cohen failed to comply with the preliminary injunction order, the district court issued an Order Requiring Defendants to Appear and Sign Waivers on February 7, 2001. RJN Ex. 15. S. Cohen did not comply with the February 7, 2001 order and was subsequently held in civil contempt on February 12, 2001. RJN Ex. 3 at 2. The civil contempt order was followed by an arrest warrant on March 2, 2001 for S. Cohen's continued refusal to comply with the court's prior orders. *See* RJN Ex. 4 at 4. S. Cohen fled to Mexico until October 27, 2005, when he was detained by the Mexican authorities and deported into the custody of the United States Marshal. Dillon Decl. ¶ 16; RJN Ex. 6. S. Cohen remained in custody for almost 14 months for civil contempt of the court's prior orders. Dillon Decl. ¶ 17.

Since the Judgment was entered in April 2001, S. Cohen has never made a single voluntary payment on Plaintiff's Judgment. S. Cohen currently resides in Tijuana, Mexico. Compl. ¶¶ 18, 22. Plaintiff has made various previous efforts to collect on his Judgment. In September 2005, Plaintiff brought an enforcement application for a TRO and turnover order. In a September 28, 2005 Order, the United States District Court for the Northern District of California found that seven individuals and twelve companies were acting in concert with S. Cohen to evade enforcement of the Judgment and enjoined them from doing anything to interfere with Plaintiff's rights thereunder. Compl. ¶ 18(a); RJN Ex. 5. One of the companies identified in the September 2005 Order was Pacnet, S.A. de C.V. ("Pacnet"), and one of the individuals was Jhuliana Cohen, S. Cohen's step-daughter. RJN Ex. 5. On June 28, 2005, Plaintiff filed an action in the Southern District of California and obtained a judgment and permanent injunction on November 18, 2009 against S. Cohen's step-daughter (Jhuliana Cohen) in the amount of $4,931,781.13, his ex-wife

4
Case No.: 5:11-CV-05411-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; DENYING DEFENDANTS' MOTION TO TRANSFER VENUE; AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

(Rosa Cohen) in the amount of $1,094,579.45, and his former attorney (Gustavo Cortez) in the amount of $802,620, based on their participation in fraudulent transfers to assist S. Cohen in concealing and transferring his assets with the intent of avoiding the Judgment. Compl. ¶ 18(b); RJN Exs. 6, 7. On March 22, 2011, the United States District Court for the Northern District of California renewed the Judgment against S. Cohen in the renewed amount of $67,867,053.36 ("Renewed Judgment"). Compl. Ex. A.

The instant action is Plaintiff's most recent endeavor to collect on his Renewed Judgment. Plaintiff filed this action on November 8, 2011, seeking relief against M. Cohen, S. Cohen's cousin, and against FNBPay, a corporation created by M. Cohen on July 15, 2010, and of which M. Cohen is listed as the sole officer, director, incorporator, and 100% shareholder. Compl. ¶¶ 14, 19; Dillon Decl. ¶ 49. Plaintiff brings this action on information and belief that M. Cohen has formed FNBPay Corporation to assist S. Cohen in funneling money through various websites with intent to conceal S. Cohen's assets from Plaintiff. Plaintiff alleges that S. Cohen has used M. Cohen to conduct business through FNBPay on S. Cohen's behalf, and to open bank accounts in M. Cohen's and/or FNBPay's name at S. Cohen's behest in order to transfer money and conduct business for the benefit of S. Cohen and/or S. Cohen's related entities. Compl. ¶ 20. Plaintiff further alleges on information and belief that M. Cohen and FNBPay knowingly conspired and agreed with S. Cohen to cause monies to be transferred and deposited into the bank account held in FNBPay's name, and to cause payments of money to M. Cohen personally to pay his mortgage, among other things, with the actual intent to hinder, delay, or defraud Plaintiff in exercising his rights as a creditor of S. Cohen. Compl. ¶¶ 27-28. Plaintiff alleges that the deposit payments at the FNBPay bank account and payments toward M. Cohen's mortgage were for no consideration and were simply a device to place these assets beyond Plaintiff's reach, as evidenced by the fact that they were re-transferred to S. Cohen at S. Cohen's request. Compl. ¶¶ 29, 47-51.

Specifically at issue in this motion for a preliminary injunction is Wells Fargo Account No. 2806354318 opened by M. Cohen under the name FNBPay ("Wells Fargo Account") that holds funds alleged to be directly controlled by S. Cohen. TRO Mot. at 7, 10; Dillon Decl. ¶¶ 46-47.

Plaintiff alleges that S. Cohen's revenue-generating business dealings relate to a Mexican online payment processing corporation, First National Bank S.A. de C.V., SOFOM ENR ("FNB Mexico"), which is registered with the California Secretary of State as a Mexican corporation authorized to do business in California. Dillon Decl. ¶¶ 21-22 & Ex. 2. S. Cohen admits to having formed FNB Mexico and appears to be Chairman of the Board of Directors, Senior Vice President, and beneficial owner of FNB Mexico. Dillon Decl. ¶¶ 24-26.

Based on other evidence gathered by Plaintiff's attorney, it appears that FNBPay is wholly owned by FNB Mexico. *See* Dillon Decl. ¶¶ 31-46. During a judgment debtor examination of S. Cohen conducted by Plaintiff's attorney on July 12, 2011, S. Cohen explained that FNBPay.com operates as the credit card payment processing arm of FNB Mexico. *See* Dillon Decl. Ex. 1 at 71:5-10. FNB Mexico earns money by charging fees for facilitating wire transfers through the website www.fnbpay.com. *See* Dillon Decl. ¶¶ 42-45. The FNBPay.com website instructs persons in the United States who wish to wire or deposit funds to FNBPay.com to wire their money to the Wells Fargo Account. *See* Dillon Decl. ¶¶ 45-50 & Ex. 14. FNB Mexico customers are directed to deposit money directly into the Wells Fargo Account. *Id.*

Plaintiff also argues that S. Cohen owns, operates, and generates revenue through several affiliated websites, all with the assistance of M. Cohen. M. Cohen is listed as the contact person on the following websites: www.newmerchantnow.com, www.fnbprocessing.com, and www.rxpill.com. Dillon Decl. ¶¶ 61-62 & Ex. 18. The contact information on each of these three websites for the "Mexican Office" lists an address that matches the address for FNB Mexico, and lists a telephone number that matches S. Cohen's cell phone number, as stated during his judgment debtor examination. Dillon Decl. ¶¶ 62-64 & Ex. 18. The contact information for the "United States" office lists "4492 Camino de la Plaza, Suite 2097, San Ysidro, CA 92173," which is a P.O. Box opened by S. Cohen, as stated during his judgment debtor examination. Dillon Decl. ¶ 62. Allegedly, these websites are also engaged in credit card processing. *See* Dillon Decl. Ex. 18. A fourth website at issue is www.fnbpay.net. The website's "About Us" page lists the same San Ysidro address as its "Main Office," with the "Corporate Office" located in Chandler, Arizona, at

6
Case No.: 5:11-CV-05411-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; DENYING DEFENDANTS' MOTION TO TRANSFER VENUE; AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

the same address on file with the Arizona Secretary of State for FNBPay Corporation. Dillon Decl. ¶¶ 52-57. Plaintiff contends that any funds in the Wells Fargo Account traceable to sales, transfers, or deposits related to these various websites were also fraudulently conveyed and are properly subject to execution by Plaintiff in enforcement of the Renewed Judgment against S. Cohen. TRO Mot. at 13.

According to the report of a private investigator hired by Plaintiff, the subject Wells Fargo Account, opened with Wells Fargo Bank at 1004 W. Chandler Blvd., has a "business checking account balance of $109,205.00." Dillon Decl. ¶ 50 & Ex. 22. However, after the Court issued the TRO and granted Plaintiff limited expedited discovery, Defendants produced bank statements for the Wells Fargo Account from January 1, 2010 through August 31, 2011 and alleged that the Account was closed in August 2011 with a closing balance of $0.00. By Plaintiff's own admission, "[i]t is unclear what funds remain or were deposited/withdrawn from the account since August 31, 2011." Reply Br. ISO PI at 5.[7]

## II. LEGAL STANDARDS

### A. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

Where a defendant moves to dismiss a suit for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand a motion to dismiss for

---

[7] Plaintiff argues that his inability to acquire more information regarding "the relationship between FNBPay Corp. and FNB Mexico, the relationship between S. Cohen and M. Cohen, as well as S. Cohen's involvement in the origination of funds that pass through the Wells Fargo Account," was due to the fact that S. Cohen attended M. Cohen's deposition on December 13, 2011 and refused to leave. Declaration of Timothy P. Dillon in Support of Reply Brief in Support of OSC Re: Preliminary Injunction ("Dillon Reply Decl.") ¶¶ 4-12, ECF No. 24-1. To that end, he has filed an "*Ex Parte* Application for a Protective Order to Exclude Stephen Michael Cohen from Defendants' Pretrial Depositions and to Seal Defendants' Pre-Trial Depositions or, Alternatively, for an Order Shortening Time on Motion." *See* ECF No. 23. Plaintiff's *ex parte* motion does not comply with Civil Local Rule 7-10 and therefore is DENIED without prejudice. He may renew this motion in accordance with the Civil Local Rules.

lack of personal jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). At this stage of the proceeding, "uncontroverted allegations in plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in plaintiff's favor." *Brayton Purcell*, 606 F.3d at 1127 (internal quotation marks, citations, and alterations omitted).

### B. Rule 12(b)(3) Motion to Dismiss for Improper Venue

Where a defendant moves to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). When considering a motion to dismiss pursuant to Rule 12(b)(3), a court need not accept the pleadings as true and may consider facts outside of the pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). Pursuant to 28 U.S.C. § 1406(a), if the Court determines that venue is improper, the Court must either dismiss the action or, if it is in the interests of justice, transfer the case to a district or division in which it could have been brought. Whether to dismiss for improper venue, or alternatively to transfer venue to a proper court, is within the discretion of the district court. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

### C. Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) authorizes the transfer of a case to another district in which the case would be properly brought, for the convenience of parties and witnesses or in the interests of justice. For a court to transfer venue pursuant to § 1404(a), the moving party bears the burden of showing that: (1) the transferee court is one in which the original action could have been brought, and (2) the convenience of the parties and witnesses in the interest of justice favor transfer. *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). The decision to transfer pursuant to § 1404(a) is within the court's discretion. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).

### D. Motion for Preliminary Injunction

8
Case No.: 5:11-CV-05411-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; DENYING DEFENDANTS' MOTION TO TRANSFER VENUE; AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The issuance of a preliminary injunction is at the discretion of the district court. *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009). To obtain a preliminary injunction, a plaintiff generally must show that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24-25 (2008); *accord Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126-27 (9th Cir. 2009). An injunction may also be appropriate where the plaintiff shows "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). To succeed on its motion for a preliminary injunction, Plaintiff must satisfy his burden of proving all four elements of the *Winter* test. *Id.* In determining whether to issue a preliminary injunction, a district court may consider hearsay and other evidence otherwise inadmissible. *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); *see also Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.").

**III. DISCUSSION**

**A. Motion to Dismiss for Lack of Personal Jurisdiction**

To determine the propriety of asserting personal jurisdiction over a nonresident defendant, the Court examines whether such jurisdiction is permitted by the applicable state's long-arm statute and comports with the demands of federal due process. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011). Because California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of

the United States."); *Mavrix Photo*, 647 F.3d at 1223. For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkwagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a nonresident defendant. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). General jurisdiction exists where a nonresident defendant's activities in the state are "continuous and systematic" such that said contacts approximate physical presence in the forum state. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (internal quotation marks and citation omitted). Where general jurisdiction is inappropriate, a court may still exercise specific jurisdiction where the nonresident defendant's "contacts with the forum give rise to the cause of action before the court." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).

Plaintiff does not claim that the Court has general jurisdiction over Defendants; rather, he argues only for specific jurisdiction. To determine whether a defendant's contacts with the forum state are sufficient to establish specific jurisdiction, the Ninth Circuit employs a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Plaintiff bears the burden of satisfying the first two prongs. *Sher*, 911 F.2d at 1361. If Plaintiff

10
Case No.: 5:11-CV-05411-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; DENYING DEFENDANTS' MOTION TO TRANSFER VENUE; AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

does so, then the burden shifts to Defendants to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

### 1. Purposeful Availment/Purposeful Direction

The first prong is satisfied by either purposeful availment or purposeful direction. *Brayton Purcell*, 606 F.3d at 1128. For suits sounding in contract, courts typically apply the "purposeful availment" test, which asks whether the defendant has "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Sher*, 911 F.2d at 1361 (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)). By contrast, for cases involving tortious conduct, courts most often employ a purposeful direction analysis, which asks whether the defendant has "'purposefully direct[ed] his activities at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum.'" *CollegeSource*, 653 F.3d at 1077 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)). Here, Plaintiff claims a type of intentional tort, alleging that Defendants knowingly received transfers from S. Cohen, a Judgment-Debtor, for the express purpose of preventing Plaintiff from being able to enforce his valid Judgment, in violation of the UFTA, and thus purposeful direction analysis is applicable.

The Ninth Circuit evaluates purposeful direction using the three-part "*Calder*-effects" test. *See Schwarzenegger,* 374 F.3d at 803; *see also Calder v. Jones,* 465 U.S. 783 (1984). Under this test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1206 (internal quotation marks omitted).

All three elements are satisfied here because Plaintiff has alleged that Defendants' intentional act of receiving fraudulently conveyed assets from S. Cohen to M. Cohen via FNBPay was done for the express purpose of frustrating Plaintiff's ability to enforce his judgment, obtained here in the Northern District of California. *See State Farm Mut. Auto. Ins. Co. v. Tz'doko*

11

Case No.: 5:11-CV-05411-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; DENYING DEFENDANTS' MOTION TO TRANSFER VENUE; AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

*V'CHESED of Klausenberg*, 543 F. Supp. 2d 424, 431 (E.D. Pa. 2008) (asserting jurisdiction over nonresident defendants who were alleged to be fraudulent transferees of judgment debtor, because effect of alleged fraudulent conveyance was to interfere with enforcement of a judgment in the forum state); *Gutierrez v. Givens*, 1 F. Supp. 2d 1077, 1082-83 (S.D. Cal. 1998) (asserting jurisdiction over nonresident bank defendant who was alleged to have knowingly engaged in fraudulent transactions "in furtherance of an illegal conspiracy to purposefully defraud 29,000 Californians of a judgment duly awarded by a California state court"). As alleged by Plaintiff, Defendants' conduct, as they knew it likely would, had the effect of injuring Plaintiff in California, where he resides and where he seeks to enforce his Renewed Judgment. Thus, under the "effects test," the purposeful direction requirement necessary for specific jurisdiction is satisfied.[8]

### 2. Arising Out of or Relating to Forum-Related Activities

The second prong of the test for specific jurisdiction requires that "the claim asserted in the litigation arises out of the defendant's forum related activities." *Panavision Int'l, L.P. v. Toeppen,*

---

[8] Moreover, even if this Court were to apply the purposeful availment test, Plaintiff has provided adequate documentary evidence supporting his allegation that Defendants have "purposefully avail[ed] [themselves] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802 (internal quotations omitted). For example, the www.fnbpay.com website is hosted by Pacnet, whose business address is in San Diego, California, and the FNBPay.com IP address location is San Ysidro, California. Declaration of Timothy P. Dillon in Support of Opposition to Defendants' Motion to Dismiss ("Dillon Opp'n Decl.") ¶¶ 4-5 & Exs. 2-3. Furthermore, the address listed on the affiliated websites, www.newmerchantnow.com, www.fnbprocessing.com, and www.rxpillnet, is located in San Ysidro, California, and M. Cohen is listed as the contact person. Dillon Decl. ¶¶ 61-62 & Ex. 18. Defendants insist in their opposition to Plaintiff's Brief Regarding Personal Jurisdiction and Venue that they have "[n]ever rented the post office box at 4492 Camino de la Plaza in San Ysidro, California," ECF No. 40 at 3, but in their motion to dismiss, they concede that "FNBPay did have use of a small mail box at private postal center located at 4492 Camino de la Plaza, in San Ysidro, California," between May 2010 and July 30, 2010, ECF No. 32 at 2. In any event, at this early stage, the Court construes all factual disputes regarding jurisdiction in favor of Plaintiff. *See Brayton Purcell*, 606 F.3d at 1127. Finally, S. Cohen, on behalf of FNB Mexico, appointed M. Cohen as FNB Mexico's "sole representative in the United States" and authorized him "to open and maintain a bank account with Wells Fargo Bank on behalf of First National Bank, S.A. de C.V.," arguably for purposes of doing business in the State of California. *See* Declaration of Timothy P. Dillon in Support of Reply Brief Regarding Personal Jurisdiction and Venue, Ex. 1. Thus, Defendants' contacts with California appear sufficient to establish specific jurisdiction even under a purposeful availment analysis.

12
Case No.: 5:11-CV-05411-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; DENYING DEFENDANTS' MOTION TO TRANSFER VENUE; AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

141 F.3d 1316, 1322 (9th Cir. 1998). This requires a showing of "but for" causation. *Id.* Here, the Court finds that "but for" Defendant's alleged forum-related activities of fraudulently transferring assets from S. Cohen to M. Cohen for the purpose of frustrating Plaintiff's ability to enforce his Renewed Judgment in the Northern District of California, Plaintiff would not have been injured as alleged. Accordingly, Plaintiff's claim arises out of Defendants' forum-related activities, and the second requirement for specific jurisdiction is satisfied. Plaintiff has therefore established a prima facie case of personal jurisdiction over Defendants.

### 3. Reasonableness

Finally, the Court must consider whether it is reasonable to exercise personal jurisdiction over Defendants. An otherwise valid exercise of specific jurisdiction is presumed reasonable, unless defendants "'present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable.'" *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) (quoting *Burger King*, 471 U.S. at 477). Courts often consider the following seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993); *see also Burger King*, 471 U.S. at 476-77.

Defendants have failed to meet their high burden to overcome the presumption of reasonableness. Although Defendants' contacts with the forum state are not particularly extensive, nor are they insignificant, and the other factors are either neutral or favor exercising jurisdiction. First, Defendants' burden of defending this suit in California is no greater than would be the burden on Plaintiff, who resides in the Northern District of California, of litigating in Arizona. Second, maintaining the suit would not interfere with Arizona's sovereignty, since the only claim at issue is brought under the UFTA, which both Arizona and California have adopted. Third, California has a very strong interest in the enforcement of judgments of its courts, and in providing

13
Case No.: 5:11-CV-05411-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; DENYING DEFENDANTS' MOTION TO TRANSFER VENUE; AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

a forum for its residents to protect their judgments won in a California district court. Finally, judicial efficiency is best served by maintaining this suit in this district, where the underlying proceedings giving rise to Plaintiff's claim for fraudulent conveyance occurred.

Balancing these seven factors, the Court concludes that the exercise of jurisdiction over Defendants is not unreasonable. The requirements of due process being satisfied, the Court finds that it has specific jurisdiction over Defendants, and accordingly DENIES Defendants' motion to dismiss for lack of personal jurisdiction.

### B. Motion to Dismiss or Transfer for Improper Venue

Defendants argue that venue is not proper under 28 U.S.C. § 1391(a) and, alternatively, that the Court should exercise its discretion and transfer venue pursuant to 28 U.S.C. § 1404(a).

#### 1. Motion to Dismiss

Under 28 U.S.C. § 1391(a), a civil action may be brought

> only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Venue may be proper in multiple districts so long as a "substantial part" of the underlying events took place in each of those districts. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005) (citing cases from various circuits).

Plaintiff claims that venue is proper because "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" in this District. 28 U.S.C. § 1391(a)(2). Plaintiff makes two arguments. First, Plaintiff argues that the events giving rise to the alleged claims include the issuance of the original Judgment in the Northern District of California and the recently Renewed Judgment by the same court, which Defendants' alleged unlawful conduct has prevented Plaintiff from being able to enforce. Second, Plaintiff argues that a substantial part of property that is the subject of the action is situated in the Northern District of California because the subject of this action is a Wells Fargo

14

Account, and Wells Fargo is headquartered and maintains its principal place of business in San Francisco, California. *See Pac. Decision Sciences Corp. v. Superior Court*, 121 Cal. App. 4th 1100, 1108 (2004) ("When . . . the issue, as in this case, involves jurisdiction to compel the obligor to pay one claimant and not a competing claimant, the debt or claim is usually regarded as having a situs in any state in which personal jurisdiction of the debtor can be obtained." (internal quotation marks and citations omitted)).

Plaintiff's arguments are well-taken, and Defendants have offered no convincing arguments in rebuttal. Defendants' arguments are directed more at transferring pursuant to 28 U.S.C. § 1404, and will therefore be addressed in the following section. The Court concludes that venue in this district is proper, and therefore Defendants' motion to dismiss for improper venue is DENIED.

### 2. Motion to Transfer

Defendants also move, in the alternative, to transfer pursuant to 28 U.S.C. § 1404(a). Under 28 U.S.C. § 1404(a), a district court may, in its discretion, transfer any civil action to any other district or division where the action may have originally been brought, based on "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *accord Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). However, a party seeking transfer must make "a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org.*, 487 U.S. at 29 (internal quotation marks and citation omitted). Before transferring pursuant to § 1404(a), the Court should consider public factors relating to "the interest of justice" and private factors relating to "the convenience of the parties and witnesses." *Decker Coal*, 805 F.2d at 843. Such factors may include: (1) the location where relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' respective contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the

15
Case No.: 5:11-CV-05411-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; DENYING DEFENDANTS' MOTION TO TRANSFER VENUE; AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the relevant public policy of the forum state, if any. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

Although Defendants argue that the convenience of witnesses and Defendants favors transferring this case to the District of Arizona, the Court is not persuaded that these factors outweigh both the private and public interest factors that favor maintaining the case in this District. First, although Defendants are located in Arizona, Plaintiff is located in California, and thus the convenience to the parties is a neutral factor. It would be equally burdensome for Plaintiff to litigate this case in Arizona as it would be for Defendants to litigate in California.

Second, Defendants assert that all of the relevant documents and records are located at Defendant FNBPay's principal place of business, which is located in the District of Arizona. However, M. Cohen concedes that FNBPay used a mailbox in San Ysidro, California from May 2010 to July 30, 2010. *See* Mot. to Dismiss at 2. Moreover, four websites allegedly affiliated with FNBPay – www.fnbpay.net, www.newmerchantnow.com, www.fnbprocessing.com, and www.rxpill.com – list the same FNBPay address in San Ysidro, California as their contact address. Dillon Decl. ¶¶ 52-62 & Ex. 18. Clearly, at least some of the evidence is located in California.

Third, although Defendants claim that all of their witnesses are located in Arizona, Defendants have failed to identify which witnesses – apart from Defendants themselves – would be inconvenienced by litigating this case in California. *See* Mot. to Dismiss at 6-7. For example, the factual allegations suggest that S. Cohen, the Judgment-Debtor, will be a key witness, and that he is presently located in Mexico. Thus, there is only a minimal difference in burden between requiring S. Cohen to appear in this case in Arizona or California. Furthermore, as discussed previously, Wells Fargo is domiciled in California and would therefore not be inconvenienced if called as a witness in this case. It is therefore unclear that transferring this case to Arizona would, in fact, be a greater convenience to the parties and witnesses.

16
Case No.: 5:11-CV-05411-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; DENYING DEFENDANTS' MOTION TO TRANSFER VENUE; AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Meanwhile, several factors favor retaining the case in the Northern District of California. As previously discussed, the underlying events giving rise to Plaintiff's current claims occurred in this district. S. Cohen, the Judgment-Debtor, has already been found in contempt by the Northern District for actions related to those alleged in the Complaint, and the district is already familiar with the background of the case. Therefore, it would not serve the interests of judicial economy to transfer this case, nor would it serve the interests of justice to require Plaintiff, a Northern District of California resident, to travel to Arizona to prosecute his claims. *See Allen v. Scribner*, 812 F.2d 426, 436-37 (9th Cir. 1987) (holding that where the court is familiar with the case and transfer may lead to delay, the court is justified in refusing to transfer). Furthermore, California has a strong public policy interest in providing a forum for its residents to litigate to enforce judgments obtained in this state. *See Gutierrez*, 1 F. Supp. 2d at 1084 (declining to transfer upon making similar findings).

Defendants have not met their burden of showing that litigating this action in this District will cause great inconvenience or unfairness as would justify transfer. In the absence of such a showing, the plaintiff's choice of forum is generally treated with great deference. *See Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995). Accordingly, Defendants' motion to transfer venue is DENIED.

### C. Preliminary Injunction

A plaintiff may not obtain a preliminary injunction unless he shows that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 129 S. Ct. at 375 (emphasis in original). A mere possibility that irreparable injury will result is insufficient to warrant the extraordinary relief of a preliminary injunction. *See Enyart v. Nat'l Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011).

In its order granting a TRO, the Court previously found that Plaintiff had shown (1) S. Cohen has a history of dishonest behavior and of making fraudulent conveyances through the assistance of his family and associates to avoid execution of Plaintiff's Judgment; (2) it is likely that M. Cohen has assisted S. Cohen in channeling funds through the FNBPay Wells Fargo

17
Case No.: 5:11-CV-05411-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; DENYING DEFENDANTS' MOTION TO TRANSFER VENUE; AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Account with intent to defraud Plaintiff, a creditor; and (3) *ex parte* temporary injunctive relief was necessary "to prevent the dissipation of more than $109,000 that is currently being held [in the Wells Fargo Account . . . under the name FNBPay." TRO Mot. at 2; *see* TRO Order at 6-10. Based on these findings, the Court granted Plaintiff limited expedited discovery so that he could substantiate his claims in support of his motion for a preliminary injunction.

Although it appeared at the time of Plaintiff's TRO application that he was likely to succeed on the merits of at least some of his claims and that he was likely to suffer irreparable injury in the absence of *ex parte* TRO relief, there now appear to be substantial questions concerning whether the subject Wells Fargo Account is still open, and if so, what funds remain. As previously noted, Plaintiff concedes "[i]t is unclear what funds remain or were deposited/withdrawn from the account since August 31, 2011." Reply Br. ISO PI.

Defendants produced bank statements for the Wells Fargo Account from January 1, 2010 through August 31, 2011, which show an ending balance of zero in August 2011, a negative ending balance in June and July 2011, and ending balances of $100 or less in February through May 2011. Dillon Reply Decl. ¶ 15 & Ex. 3. Admittedly, Defendants' bank statements reflect some curious activity. For example, the bank statement for the period July 1 through July 30, 2010 shows that $47,371.81 was deposited and $48,913.93 withdrawn during that month. *Id.*[9] The bank statement for the period August 1 through August 31, 2010 shows that $110,833.09 was withdrawn on August 2, 2010, and then deposited back on August 3, 2010. *See id.* The Court agrees with Plaintiff that this pattern of transactions appears suspect and creates at least an inference of misconduct, when considered in the context of S. Cohen's past pattern and practice of fraudulently conveying funds through his relatives' bank accounts. Nevertheless, according to the bank

---

[9] The second page of the bank statement exhibit is missing from the Dillon Reply Declaration but is reproduced is full in Exhibit A attached to the Declaration of Michael J. Cohen in Support of his Opposition to Plaintiff Gary Kremen's Reply in Support of Order to Show Cause Re: Preliminary Injunction ("Cohen Opp'n Decl."). The second page of the bank statement for the month of July 2010 shows more specifically that, among other transactions, $5,997.00 was withdrawn on July 23, 2010 and then deposited on July 26, 2010, and $15,129.45 was deposited on July 26, 2010 and then withdrawn the following day. Cohen Opp'n Decl. Ex. A at 21.

1    statements produced and submitted as evidence to the Court, it appears that the last period of major

2    activity in the Wells Fargo Account was February 2011. *See id.* From February 2011 to August

3    2011, there appear to be no significant transactions into or out of the Account, and Defendants

4    assert that the Account has been closed since August 2011. *See id.* In light of this evidence that

5    the Account may no longer be open or hold any funds, Plaintiff has not demonstrated that it is

6    likely, as opposed to merely possible, that he will suffer irreparable harm in the absence of

7    preliminary injunctive relief. *See Stormans*, 586 F.3d at 1127 (explaining that "[i]n *Winter*, the

8    Supreme Court definitively refuted our 'possibility of irreparable injury' standard").

9          At the hearing, Plaintiff articulated a theory of what he believes is Defendants' and S.

10   Cohen's "whack-a-mole" practice of opening and then closing various bank accounts under

11   FNBPay's name, all with intent to defraud Plaintiff. While Plaintiff may ultimately be able to

12   prove his theory, "[s]peculative injury does not constitute irreparable injury sufficient to warrant

13   granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674

14   (9th Cir. 1988). At this time, Plaintiff has produced no evidence regarding these potential other

15   accounts, merely hypothesizing that Defendants have other, as yet unidentified accounts containing

16   fraudulently conveyed funds. Plaintiff's allegations of irreparable harm do not rise above the level

17   of speculation.

18         A preliminary injunction is "an extraordinary remedy that may only be awarded upon a

19   clear showing that the plaintiff is entitled to such relief." *Winter*, 129 S. Ct. at 375-76 (internal

20   citations omitted). Because it is no longer clear that Plaintiff is likely to suffer irreparable harm, no

21   preliminary injunction can issue at this time. Therefore, the Court will not now revisit whether

22   Plaintiff has shown a likelihood of success on the merits or whether the balance of equities and the

23   public interest favor granting or denying a preliminary injunction.

24   **IV. CONCLUSION**

25         For the reasons discussed herein, the Court DENIES Defendants' filed a Motion to Dismiss

26   for Lack of Jurisdiction and Improper Venue, and DENIES Defendants' Motion to Transfer to the

27   District of Arizona pursuant to 28 U.S.C. § 1404. At this time, the Court also DENIES Plaintiff's

28

19
Case No.: 5:11-CV-05411-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND
IMPROPER VENUE; DENYING DEFENDANTS' MOTION TO TRANSFER VENUE; AND DENYING
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

motion for a preliminary injunction, without prejudice.  The TRO previously granted expires effective upon the date of this Order.

**IT IS SO ORDERED.**

Dated: January 7, 2012

_____
LUCY H. KOH
United States District Judge