UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| GARY KREMEN, | ) | Case No.: 5:11-CV-05411-LHK |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR SUMMARY |
| v. | ) | JUDGMENT; AND DENYING |
| | ) | STEPHEN COHEN'S MOTION TO |
| MICHAEL JOSEPH COHEN, an individual; and | ) | INTERVENE |
| FNBPAY CORPORATION, an Arizona | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Gary Kremen ("Plaintiff") filed this action on November 8, 2011, under California's Uniform Fraudulent Transfer Act ("UFTA"), Cal. Civ. Code §§ 3439.04, 3439.05, 3439.07, 3440, against Defendants Michael Joseph Cohen ("M. Cohen") and FNBPay Corporation ("FNBPay"), a corporation incorporated under the laws of the State of Arizona (collectively "Defendants"). *See* ECF No. 1 ("Compl."). Plaintiff alleges that Defendants are the transferees of certain property, including money, fraudulently transferred to each of them by Stephen Michael Cohen ("S. Cohen" or "Judgment Debtor"), an individual against whom Plaintiff has an enforceable and unpaid money judgment in the amount of $67,867,053.37 ("Renewed Judgment"). Before the Court are two motions: (1) M. Cohen's motion for summary judgment, filed February 2, 2012, *see* ECF No. 72 ("MSJ"); and (2) S. Cohen's ("Movant") motion to intervene, filed April 2, 2012, *see* ECF No. 93. Both motions are fully briefed. The Court finds these matters appropriate

for determination without oral argument and accordingly VACATES the July 19, 2012 hearing on the motion for summary judgment and the August 23, 2012 hearing on the motion to intervene. *See* Civ. L. R. 7-1(b).  The July 19, 2012 case management conference remains as set.  Having considered the parties' submissions and the relevant law, and for the reasons discussed herein, the Court DENIES M. Cohen's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d), and DENIES S. Cohen's motion to intervene as of right or, alternatively, permissively.

## I.    BACKGROUND

### A.  Factual Background

The facts of this case have previously been summarized in the Court's Order Denying Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue; and Denying Plaintiff's Motion for Preliminary Injunction, ECF No. 68, and will therefore be recounted here only to the extent necessary.  Plaintiff is an internet entrepreneur who obtained a $65 million judgment (the "Judgment") in the United States District Court for the Northern District of California, on April 3, 2001, against S. Cohen and S. Cohen's alter ego entities for fraudulently converting the internet domain name www.sex.com.  *See* Compl. ¶ 16; *see also Kremen v. Cohen*, 337 F.3d 1024, 1026-27 (9th Cir. 2003) (describing the facts giving rise to the Judgment and history between Kremen and S. Cohen relevant to this case); *Kremen v. Jhuliana Aramis Cohen*, No. 05-cv-01319-JM (POR), 2007 WL 1875779 (S.D. Cal. June 27, 2007) (same).

S. Cohen has resisted court orders and Kremen's attempts to exact payment on the Judgment.  During the underlying litigation between Kremen and S. Cohen, S. Cohen failed to comply with a preliminary injunction order requiring the repatriation of $25 million from offshore accounts.  *See* Pl.'s Request for Judicial Notice ("RJN") Ex. 15, ECF No. 5-6.  S. Cohen fled to Mexico, where, in October 2005, he was detained and deported into the custody of the U.S. Marshal pursuant to an arrest warrant issued in March 2001 for S. Cohen's refusal to comply with various court orders.  *See* RJN Ex. 4 at 4; RJN Ex. 6; Compl. ¶ 18.  In September 2005, Plaintiff brought an enforcement application, and the United States District Court for the Northern District

Case No.: 5:11-CV-05411-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; DENYING MOTION TO INTERVENE

United States District Court
For the Northern District of California

of California found that seven individuals and twelve companies were acting in concert with S. Cohen to evade enforcement of the Judgment and enjoined them from acting to interfere with Plaintiff's rights thereunder.  Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF No. 76 ("Opp'n to MSJ"), at 4.  On November 18, 2009, Plaintiff obtained a judgment and permanent injunction against S. Cohen's step-daughter, Jhuliana Cohen; his ex-wife, Rosa Cohen; and his former attorney, Gustavo Cortez, based on their participation in fraudulent transfers to assist S. Cohen's attempts to conceal assets and avoid the Judgment.  *Id.* at 4-5.  On March 22, 2011, the United States District Court for the Northern District of California renewed the Judgment against S. Cohen in the amount of $67,867,053.36 ("Renewed Judgment").  *Id.* at 1-2.

Most recently, Plaintiff filed this action on November 8, 2011, seeking relief against M. Cohen, S. Cohen's cousin, and against FNBPay, a corporation created by M. Cohen.  Plaintiff alleges M. Cohen formed FNBPay to assist S. Cohen in funneling money through various websites with the intent to conceal S. Cohen's assets from Plaintiff and avoid payment of Plaintiff's Renewed Judgment.  Compl. ¶ 21.  Plaintiff further alleges S. Cohen has used M. Cohen to conduct business through FNBPay on S. Cohen's behalf, and to open bank accounts in M. Cohen's and/or FNBPay's name to transact business for the benefit of S. Cohen.  *Id.* ¶ 20.  In particular, Plaintiff asserts that deposits and withdrawals of funds into and out of a specific Well Fargo bank account (the "Wells Fargo Account"), opened by M. Cohen under the name FNBPay, were the result of transfers made by, or at the direction of, S. Cohen.  Opp'n to MSJ at 2.

**B.  Procedural History**

Plaintiff filed this action on November 8, 2011.  On December 2, 2011, Plaintiff filed an *ex parte* motion seeking a temporary restraining order ("TRO") freezing certain assets "to prevent the dissipation of more than $109,000 that is currently being held at Wells Fargo Bank . . . under the name FNBPay" ("Wells Fargo Account").  ECF No. 5 at 2.  The Wells Fargo Account held in Defendants' possession is alleged to be the vehicle for the alleged fraudulent transfers from S. Cohen.  For good cause shown, the Court granted the TRO on December 7, 2011, granted Plaintiff's request for limited expedited discovery, and issued an Order to Show Cause ("OSC")

3

Case No.: 5:11-CV-05411-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; DENYING MOTION TO INTERVENE

United States District Court
For the Northern District of California

1    setting a briefing schedule and hearing date on Plaintiff's motion for a preliminary injunction

2    enjoining Defendants from disposing of funds held in the Wells Fargo Account.  *See* ECF No. 16.

3    The Court also requested supplemental briefing on whether this Court has personal jurisdiction

4    over Defendants and whether venue in this district is proper.  Defendants answered the OSC on

5    December 20, 2011, and both sides submitted supplemental briefing on personal jurisdiction and

6    venue.  Defendants also filed a motion to dismiss for lack of jurisdiction and improper venue, or, in

7    the alternative, a motion to transfer to the District of Arizona pursuant to 28 U.S.C. § 1404.  On

8    January 7, 2012, the Court denied Defendants' motion to dismiss or, in the alternative, to transfer.

9    *See* ECF No. 68.  Upon introduction of evidence that the Wells Fargo Account at issue had in fact

10   been closed in August 2011 with a closing balance of $0.00, the Court denied Plaintiff's motion for

11   a preliminary injunction for failure to show a risk of irreparable harm in the absence of an

12   injunction, and likewise dissolved the previously issued TRO on January 7, 2011.  *See id.*

13          Defendant M. Cohen filed the instant motion for summary judgment on February 6, 2012.

14   *See* ECF No. 72.  Plaintiff filed an opposition on February 21, 2012, *see* ECF No. 76, to which M.

15   Cohen replied on February 29, 2012, *see* ECF No. 78.  On April 2, 2012, Movant S. Cohen filed

16   the instant motion to intervene.  *See* ECF No. 93.  Plaintiff filed an opposition on April 10, 2012,

17   *see* ECF No. 107, to which S. Cohen replied on April 23, 2012, *see* ECF No. 112.

18          An initial case management conference was held on March 21, 2012, at which Defendants

19   failed to appear.  *See* ECF No. 94.  The Court set a fact discovery cutoff of August 23, 2012, and

20   an expert discovery cutoff of October 4, 2012.  *Id.*

21   **II.     MOTION FOR SUMMARY JUDGMENT**

22          **A.  Legal Standard**

23          Summary judgment is proper where "the pleadings, depositions, answers to interrogatories,

24   and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

25   any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.

26   Civ. P. 56(c).  A "genuine" dispute as to material facts exists only if there is sufficient evidence for

27   a reasonable jury to return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby,*

28

Case No.: 5:11-CV-05411-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; DENYING MOTION TO
INTERVENE

**United States District Court**
For the Northern District of California

1     *Inc.*, 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the Court draws all

2     reasonable inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus.*

3     *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

4          The moving party has the burden of demonstrating the absence of a genuine issue of fact for

5     trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the moving party

6     must either produce evidence negating an essential element of the nonmoving party's claim or

7     defense or show that the nonmoving party does not have enough evidence of an essential element

8     to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

9     *Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted).  Once the moving party

10    has satisfied its initial burden of production, the burden shifts to the nonmoving party to show that

11    that there is a genuine issue of material fact.  *Id.* at 1103.  A party asserting that a fact is genuinely

12    disputed must support that assertion by either citing to particular parts of the record or by showing

13    that the materials cited by the moving party do not establish the absence of a genuine dispute.  Fed.

14    R. Civ. P. 56(c).  The nonmovant must go beyond its pleadings "and by her own affidavits, or by

15    the depositions, answers to interrogatories, and admissions on file, designate specific facts showing

16    that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324 (internal quotation marks and

17    citation omitted).  The nonmovant must submit sufficient evidence to establish a material factual

18    dispute, but he need not show the issue will be resolved conclusively in his favor.  *Liberty Lobby*,

19    477 U.S. at 248-49 (citation omitted).

20               **B.  Analysis**

21                  **1.  UFTA Claim**

22          M. Cohen moves for summary judgment on the ground that Plaintiff has failed to establish

23    an essential element of his UFTA claims, namely that a transfer of assets from S. Cohen to

24    Defendants ever occurred.  To prevail on his UFTA claims, Plaintiff has the burden of proving the

25    elements of a fraudulent transfer by a preponderance of the evidence.  *In re 3dfx Interactive, Inc.*,

26    389 B.R. 842, 863-64 (Bankr. N.D. Cal. 2008) (citing *Whitehouse v. Six Corp.*, 40 Cal. App. 4th

27    527, 604 (1995)).  The UFTA provides that a transfer is fraudulent as to a creditor if it is made with

28

Case No.: 5:11-CV-05411-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; DENYING MOTION TO
INTERVENE

the actual intent to hinder, delay, or defraud any creditor of the debtor. Cal. Civ. Code § 3439.04(a)(1). In addition, a transfer is constructively fraudulent if it is made without the debtor receiving a reasonable equivalent value in exchange for the transfer at a time when the debtor was insolvent. Cal. Civ. Code § 3439.05. For a fraudulent transfer to occur, however, there must be a "transfer" of an "asset" as defined in the UFTA. *Fidelity Nat'l Title Ins. Co. v. Schroeder*, 179 Cal. App. 4th 834, 841 (2009). An "asset" includes any property of a debtor, except to the extent such property is encumbered by a valid lien. Cal. Civ. Code § 3439.01(a)(1). The UFTA defines "transfer" broadly as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Cal. Civ. Code § 3439.01(i).

M. Cohen argues that Plaintiff has failed to adduce prima facie evidence that a transfer of assets from S. Cohen to Defendants in fact occurred. *See* MSJ at 3. Plaintiff concedes that he lacks direct evidence of a transfer of assets from S. Cohen to Defendants. Instead, Plaintiff argues that circumstantial evidence of the various business and personal connections between S. Cohen and Defendants is sufficient to permit a reasonable trier of fact "to find that the deposits and withdrawals of funds into and out of [the Wells Fargo Account], opened by M. Cohen under the name FNBPay, were the result of transfers made by, or at the direction of, S. Cohen." Opp'n to MSJ at 1. Unless the law requires otherwise, a Plaintiff may prove his case by a preponderance of direct or circumstantial evidence. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029-30 (9th Cir. 2006) (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-100 (2003)). Among other connections, Plaintiff here points to evidence that: (1) M. Cohen and S. Cohen are cousins; (2) M. Cohen owns 100% of FNBPay; (3) S. Cohen controls FNB Mexico; (4) M. Cohen is FNB Mexico's sole representative in the U.S.; (4) M. Cohen admitted to operating a credit card processing business using the Wells Fargo Account, together with his associate, Emilio de la Mora, who is the Chairman of the Board of FNB Mexico; (5) FNBPay.com operates as the credit card processing arm of FNB Mexico and is a wholly owned subsidiary of FNB Mexico; (6) the

Case No.: 5:11-CV-05411-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; DENYING MOTION TO INTERVENE

**United States District Court**
For the Northern District of California

1   FNBPay.com website instructs United States users who wish to wire or deposit funds to

2   FNBPay.com to wire their money to the Wells Fargo Account; (7) FNB Mexico has used the same

3   mailing address as the address listed on the Wells Fargo Account; (8) M. Cohen applied for and

4   opened the Wells Fargo Account under the business name FNBPay using S. Cohen's social

5   security number, as confirmed by S. Cohen during his July 12, 2011 judgment debtor examination;

6   and (9) S. Cohen has a history of using relatives and other associates to help him divert and conceal

7   assets with the intent to hinder, delay, or defraud Plaintiff, a judgment-creditor.  *See* Opp'n to MSJ

8   at 4-8 (internal citations omitted).

9        In addition, the bank statements for the Wells Fargo Account produced by Defendants show

10  that at least $200,000 was transferred into and out of the account between January 1, 2012, and

11  August 31, 2011.  *Id.* at 8-9 (citing Dillon OSC Decl. [ECF No. 24-1] ¶¶ 15-16).  The records

12  indicate minimal banking activity between January 2010 and June 2010, and between March 2011

13  and August 2011.  Between July 2010 and February 2011, however, a number of large deposits and

14  withdrawals were made.  A number of these transactions were immediately reversed, including a

15  withdrawal of $15,129.45 on July 26, 2010, and a withdrawal of $110,833.09 on August 2, 2010,

16  each reversed the following day.  *See* ECF No. 29-2.  Excluding reversed transactions, over

17  $20,000 was deposited and withdrawn from the account during the month of July 2010; nearly

18  $10,000 was deposited and withdrawn on December 2, 2010; and $10,000 was deposited and

19  withdrawn on January 5, 2011.  *See id.*  Plaintiff argues that this allegedly curious banking activity,

20  viewed alongside evidence linking S. Cohen to Defendants and to the Wells Fargo Account, is

21  sufficient to give rise to a reasonable inference that the transfers into and out of the Wells Fargo

22  Account were the result of fraudulent transfers by S. Cohen to Defendants.  Opp'n to MSJ at 11.

23       While the Court acknowledges that Plaintiff's evidence may be relevant to a fact finder's

24  determination of fraudulent intent, the Court disagrees with Plaintiff that these attenuated links are

25  sufficient to raise a triable issue of fact as to whether a transfer of assets from S. Cohen to

26  Defendants in fact ever occurred, which is a threshold element of Plaintiff's UFTA claims.  *See*

27  Cal. Civ. Code § 3439.04(a)(1).  While it is evident that Plaintiff believes the Wells Fargo Account

28

Case No.: 5:11-CV-05411-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; DENYING MOTION TO
INTERVENE

1   has been a conduit for fraudulent transfers of assets, the bank records themselves reveal very little

2   about the sources and recipients of the deposited and withdrawn funds.  It is not clear whether S.

3   Cohen ever supplied, or M. Cohen ever received, funds via the Wells Fargo Account, and Plaintiff

4   has directed the Court to no other evidence of an alternative conduit through which any alleged

5   fraudulent transfer between S. Cohen and Defendants might have occurred.  Plaintiff does not cite

6   a single case in which such attenuated circumstantial evidence was deemed sufficient to withstand

7   summary judgment.  Accordingly, the Court determines that, on the record thus far, the

8   circumstantial evidence of connections between Defendants, S. Cohen, and the activity in the Wells

9   Fargo Account, even considered in light of the litigation history between Plaintiff and S. Cohen, is

10   insufficient to raise a genuine issue of material fact as to the existence of an actual transfer of

11   funds.  Thus, were it not for the fact that M. Cohen's motion was brought on February 6, 2012,

12   before the initial case management conference and well before the August 23, 2012 fact discovery

13   cutoff, the Court would be inclined to grant summary judgment in favor of Defendants.  However,

14   as discussed further below, the Court determines that a denial of summary judgment is warranted

15   under Federal Rule of Civil Procedure 56(d).

16                        **2.  Rule 56(d)**

17           Plaintiff requests, in the alternative, that the Court deny or delay a decision on summary

18   judgment to allow time to conduct further discovery, pursuant to Federal Rule of Civil Procedure

19   56(d).  Rule 56(d) states that if "for specified reasons" a party cannot present sufficient facts to

20   support its opposition to the motion for summary judgment, "the court may (1) defer considering

21   the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3)

22   issue any other appropriate order."  Fed. R. Civ. P. 56(d).  District courts "should continue a

23   summary judgment motion upon a good faith showing by affidavit that the continuance is needed

24   to obtain facts essential to preclude summary judgment."  *State of Cal. ex rel. Cal. Dep't of Toxic*

25   *Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998) (citing *McCormick v. Fund*

26   *American Cos.*, 26 F.3d 869, 885 (9th Cir.1994)).  Generally, the party seeking a continuance

27   pursuant to Rule 56(d) must show that (1) "they have set forth in affidavit form the specific facts

28

8

that they hope to elicit from further discovery"; (2) "the facts sought exist"; and (3) "these sought-after facts are 'essential' to resist the summary judgment motion." *Id.* However, a court may defer summary judgment even in the absence of a formal motion under Rule 56(d). *See Garrett v. City & Cnty. of S.F.*, 818 F.2d 1515, 1518 (9th Cir. 1987) (pending motion to compel discovery may be sufficient to raise Rule 56(d) consideration). It is well within the Court's discretion to delay ruling on summary judgment if the party requesting delay has pursued discovery diligently, and the period for discovery remains open. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996). When a party moves for summary judgment before a meaningful opportunity for discovery, district courts may "fairly freely" grant a Rule 56(d) motion. *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

Although Plaintiff here has not filed a separate affidavit setting forth the specific facts he hopes to elicit from further discovery, it is apparent from both the early timing of Defendant's motion and from the discovery disputes that have transpired since briefing on this motion was completed on February 29, 2012, that M. Cohen's summary judgment motion was filed prematurely and is not ripe for disposition on the record currently before the Court. Defendant filed this motion for summary judgment on February 6, 2012, before the initial case management conference had even been held, and thus before any discovery plan had been adopted. Although limited expedited discovery was permitted on December 7, 2011, to enable Plaintiff to prepare for the hearing on his motion for preliminary injunction, this limited discovery was terminated when the Court denied preliminary injunctive relief on January 7, 2012. Thus, Plaintiff was forced to oppose this summary judgment motion without the benefit of full discovery.

In his Opposition seeking a Rule 56(d) continuance, which was filed February 21, 2012, Plaintiff indicates that he intends to complete depositions of Defendants, issue subpoenas, and conduct written discovery in order to trace funds that have passed through the Wells Fargo Account, as well as other accounts associated with Defendants and related to funds originating from S. Cohen, FNB Mexico, or affiliates thereof. Opp'n to MSJ at 12. Indeed, Plaintiff's actions since filing his Opposition have borne out those intentions. Plaintiff is awaiting a ruling on a

Case No.: 5:11-CV-05411-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; DENYING MOTION TO INTERVENE

motion for a protective order that would allow him to take M. Cohen's deposition outside the presence of S. Cohen.[1]  *See* ECF No. 138.  Plaintiff has also served business record subpoenas on a number of different third-party financial institutions in California and Arizona, including Bank of America Corp.; JP Morgan Chase Bank; Wells Fargo Bank, N.A.; and FIA Card Services, N.A. On April 26, 2012, Defendant M. Cohen filed twelve motions to quash subpoenas duces tecum, all of which were denied by Magistrate Judge Lloyd on June 18, 2012.  *See* ECF No. 137.  The record reflects that Plaintiff has diligently pursued discovery that may lead to evidence of a transfer of assets.  Such evidence would be "'essential' to resist the summary judgment motion." *Campbell*, 138 F.3d at 779.  Accordingly, the Court determines that Defendant moved for summary judgment before Plaintiff had a meaningful opportunity to obtain discovery and that a grant of summary judgment on the present record would therefore not be justified.  Defendants' motion for summary judgment is therefore DENIED without prejudice pursuant to Rule 56(d).

### III.     MOTION TO INTERVENE

#### A.  Legal Standard

Federal Rule of Civil Procedure 24(a)(2) requires that a court permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  An applicant seeking to intervene "as of right" pursuant to Federal Rule of Civil Procedure 24(a)(2)

---

[1] Plaintiff began taking M. Cohen's deposition on December 13, 2011, but unilaterally terminated the deposition after only approximately thirty minutes because S. Cohen, who accompanied M. Cohen to the deposition, refused to leave the deposition.  *See* MSJ Ex. A.  Plaintiff filed an *Ex Parte* Application for a Protective Order to Exclude Stephen Michael Cohen from Defendants' Pretrial Depositions on December 14, 2011, ECF No. 23, which the Court denied without prejudice on January 7, 2012, for failure to comply with the Civil Local Rules.  *See* ECF No. 68 at 7 n.7. Plaintiff renewed his Motion for Protective Order before Magistrate Judge Howard R. Lloyd on March 28, 2012, ECF No. 90, which Magistrate Judge Lloyd terminated on March 30, 2012, for failure to comply with his Standing Order re: Civil Discovery Disputes, *see* ECF No. 91.  On July 6, 2012, Plaintiff again renewed his Administrative Motion for Leave of Court to File a Motion for a Protective Order.  ECF No. 138.  This motion remains pending before Magistrate Judge Lloyd. Federal Rule of Civil Procedure 26(c) allows protective orders to exclude persons from depositions for good cause.

Case No.: 5:11-CV-05411-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; DENYING MOTION TO INTERVENE

must satisfy four requirements: "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action."  *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (quotation marks and citations omitted); *accord United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).  "[A]lthough an applicant seeking to intervene has the burden to show that these four elements are met, the requirements are interpreted broadly, in favor of intervention."  *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006); *see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) ("In general, we construe Rule 24(a) liberally in favor of potential intervenors.").  Furthermore, "[i]n determining whether intervention is appropriate, courts are guided primarily by practical and equitable considerations."  *Alisal Water Corp.*, 370 F.3d at 919; *accord Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

Alternatively, the court also has discretion to grant an applicant's request for permissive intervention.  Under Federal Rule of Civil Procedure 24(b), "on a timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Permissive intervention under Rule 24(b) requires an applicant to "prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction."  *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).  If these threshold requirements are all met, the court has discretion to permit or deny intervention under Rule 24(b).  "[I]n exercising its discretion, the court is to consider 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'"  *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1128 n.10 (9th Cir. 2002) (quoting Fed. R. Civ. P. 24(b)(2)).

### B.  Analysis

#### 1.  Timeliness

Case No.: 5:11-CV-05411-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; DENYING MOTION TO INTERVENE

The first requirement for intervention as of right under Rule 24(a) is timeliness.  A party seeking to intervene must act "as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation."  *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002) (citing *United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990)).  The Ninth Circuit considers three factors in determining whether a motion for intervention is timely: "'(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'"  *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (quoting *Cnty. of Orange v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986)).  Whether an applicant's motion to intervene is timely is a determination within the Court's discretion.  *See Berg*, 268 F.3d at 817.

Here, S. Cohen filed his motion on April 10, 2012, five months after Plaintiff filed suit, and just a few weeks after the initial case management conference was held.  Thus, Movant filed at an early stage of the proceedings.  Plaintiff does not dispute that S. Cohen's motion is timely.  *See* Pl.'s Opp'n to Stephen Michael Cohen's Mot. to Intervene, ECF No. 107 ("Opp'n to Mot. to Intervene"), at 3.  Movant has therefore shown that he satisfies the first requirement for intervention as of right.  *See League of United Latin Am. Citizens*, 131 F.3d at 1302.

### 2.  Impairment of Interest Relating to the Property or Transaction

"Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a 'practical, threshold inquiry,' and '[n]o specific legal or equitable interest need be established.'"  *Citizens for Balanced Use*, 647 F.3d at 897 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996)).  "To demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue."  *Id.*  Ordinarily, once the applicant has established a significant protectable interest in the action, courts readily find that disposition of the case may, as a practical matter, impair or impede the applicant's ability to protect

Case No.: 5:11-CV-05411-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; DENYING MOTION TO
INTERVENE

that interest.  *See Citizens for Balanced Use*, 647 F.3d at 898 (citing *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)).

While not clearly articulated, Movant argues that he has a legally protected interest in the subject of this action because absent his intervention, his "ability to protect his assets that are protected by law through federal and state exemptions . . . would be impaired," as would be his ability to claim offsets to the Renewed Judgment.  Mot. to Intervene at 3.  Movant asserts that Plaintiff has in the past misrepresented the value of Movant's assets applied as setoffs to the Judgment.  *Id.* at 2.  Beyond making general assertions of his interest in protecting his assets, Movant has not clearly articulated how his ability to protect his interests will be impaired or impeded absent his intervention in this action.  Even assuming Movant has satisfied the second and third factors for intervention under Rule 24(a)(2), however, Movant has failed to meet the fourth requirement, as discussed below, and his motion must accordingly be denied.  *See Prete*, 438 F.3d at 954 (holding that the applicant bears the burden of showing that each of the four elements is met); *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (explaining that where an applicant fails to meet the fourth requirement, the court need not address the first three requirements because '[f]ailure to satisfy any one of the requirements is fatal to the application'") (quoting *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009)).

### 3.  Adequacy of Representation

In evaluating the adequacy of representation, courts consider three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect."  *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (internal quotation marks and citations omitted).  "The 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties.'"  *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086).  "If an applicant for

13

Case No.: 5:11-CV-05411-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; DENYING MOTION TO INTERVENE

1    intervention and an existing party share the same ultimate objective, a presumption of adequacy of

2    representation arises," which can be rebutted by "a 'compelling showing' of inadequacy of

3    representation." *Id.* (internal citations omitted).

4         "The burden of showing inadequacy of representation is 'minimal' and satisfied if the

5    applicant can demonstrate that representation of its interests 'may be' inadequate." *Id.* (quoting

6    *Arakaki*, 324 F.3d at 1086). Nonetheless, Movant has not shown that he meets even this minimal

7    burden. Movant simply recites the standard for intervention as of right without explaining how

8    Defendant M. Cohen will not adequately represent Movant's interests. Movant and Defendants

9    appear to have the same objective of defeating Plaintiff's claims that Movant fraudulently

10   conveyed assets to Defendants for the purpose of defrauding Plaintiff. Movant has neither argued

11   nor established that he has any other objective in this action. Thus, the presumption of adequacy of

12   representation applies, and Movant proffers no evidence that rebuts this presumption. *See Arakaki*,

13   324 F.3d at 1086. M. Cohen has vigorously litigated this action, which has included opposing

14   Plaintiff's motion for a preliminary injunction, filing a motion to dismiss or to transfer venue,

15   challenging discovery requests, and bringing the instant motion for summary judgment.

16   Furthermore, if a transfer to Defendants actually has occurred, as Plaintiff alleges, then

17   Defendants' interest in defending this case is arguably even stronger than is Movant's interest.

18        In sum, although Movant has shown that his motion to intervene is timely and that he has

19   interests that may, as a practical matter, be adversely affected by the outcome of this action,

20   Movant has not shown that his interests are inadequately represented by Defendants. Accordingly,

21   Movant has not satisfied all four requirements for intervention as of right pursuant to Rule 24(a),

22   and his motion for intervention as of right is therefore DENIED.

### 4.  Permissive Intervention

24        While S. Cohen's moving papers do not expressly argue for permissive intervention under

25   Rule 24(b), Movant mentions permissive intervention in his notice, and Plaintiff addresses

26   permissive intervention in his opposition. The Court therefore considers whether Movant has made

27   an adequate showing that: (1) the court has an independent basis for jurisdiction; (2) the motion is

28

14

Case No.: 5:11-CV-05411-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; DENYING MOTION TO
INTERVENE

United States District Court
For the Northern District of California

1  timely; and (3) there is a common question of law and fact between the Movant's claim or defense

2  and the main action. *Donnelly*, 159 F.3d at 412; *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d

3  470, 473 (9th Cir. 1992). If these threshold requirements are all met, the court has discretion to

4  permit or deny intervention under Rule 24(b), taking into account "'whether the intervention will

5  unduly delay or prejudice the adjudication of the original parties; rights.'" Fed. R. Civ. P. 24(b)(3).

6         The Court concludes that Movant has not met the threshold requirements for permissive

7  intervention. Although Movant's motion is timely, as previously discussed, Movant has not clearly

8  stated any claim or defense he wishes to assert against any party to this action. Indeed, Movant has

9  altogether failed to comply with Rule 24(c), which requires that a motion to intervene "state the

10 grounds for intervention and be accompanied by a pleading that sets out the claim or defense for

11 which intervention is sought." Fed. R. Civ. P. 24(c). Although a Rule 24(c) attachment is not

12 required "where . . . the movant describes the basis for intervention with sufficient specificity to

13 allow the district court to rule," *Beckman Indus*, 966 F.2d at 475, Movant here has not adequately

14 identified the claims or defenses that he wishes to assert in this action. Consequently, Movant's

15 failure to attach a pleading not only renders his motion to intervene procedurally deficient, but

16 moreover deprives the Court of a basis for determining whether it has an independent basis for

17 jurisdiction over Movant's claims or defenses. The Court is likewise unable to determine whether

18 Movant's claims or defenses share a common question of law and fact with the main action.

19 Furthermore, because Movant has not identified what additional arguments or evidence it would

20 bring to the Court's attention, and because Movant has not shown that his interests are inadequately

21 represented by Defendants, the Court finds in its discretion that permissive intervention is not

22 warranted under the circumstances of this case. Movant's motion for permissive intervention is

23 thus likewise DENIED.

24         **IV.    CONCLUSION**

25         For the foregoing reasons, Defendant M. Cohen's motion for summary judgment is

26 DENIED without prejudice pursuant to Rule 56(d), and Movant S. Cohen's motion for intervention

27 is DENIED.

28

15

1  **IT IS SO ORDERED.**

2

3  Dated: July 17, 2012

                                  *Lucy H. Koh*

4                                    LUCY H. KOH

                                  United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

16

Case No.: 5:11-CV-05411-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; DENYING MOTION TO INTERVENE