UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GARY KREMEN, | Case No.: 5:11-CV-05411-LHK |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| MICHAEL JOSEPH COHEN, an individual; and FNBPAY CORPORATION, an Arizona corporation, | |
| Defendants. | |

Plaintiff Gary Kremen ("Plaintiff") filed this action on November 8, 2011, under California's Uniform Fraudulent Transfer Act ("UFTA"), Cal. Civ. Code §§ 3439.04, 3439.05, 3439.07, 3440, against Defendants Michael Joseph Cohen ("M. Cohen") and FNBPay Corporation ("FNBPay"), a corporation incorporated under the laws of the State of Arizona (collectively "Defendants"). *See* ECF No. 1 ("Compl."). Plaintiff alleges that Defendants are the transferees of certain property, including money, fraudulently transferred to each of them by Stephen Michael Cohen ("S. Cohen" or "Judgment Debtor"), an individual against whom Plaintiff has an enforceable money judgment in the amount of $67,867,053.37 ("Renewed Judgment"). At a hearing on July 19, 2012, counsel for Plaintiff acknowledged that Plaintiff had by that point succeeded in collecting approximately $20 million. Tr. at 8:3-8. Now before the Court is Defendant Michael Cohen ("M. Cohen")'s renewed motion for summary judgment. The Court

1

Case No.: 5:11-CV-05411-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

finds these matters appropriate for determination without oral argument and accordingly VACATES the January 3, 2012 hearing on the motion for summary judgment, *see* Civ. L. R. 7-1(b), and denies at moot M. Cohen's motion to appear by telephone at that hearing. Having considered the parties' submissions and the relevant law, and for the reasons discussed herein, the Court GRANTS M. Cohen's motion for summary judgment.[1]

## I. BACKGROUND

### A. Factual Background

The facts of this case have previously been summarized in the Court's Order Denying Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue; and Denying Plaintiff's Motion for Preliminary Injunction, ECF No. 68, and will therefore be recounted here only to the extent necessary. Plaintiff is an internet entrepreneur who obtained a $65 million judgment (the "Judgment") in the United States District Court for the Northern District of California, on April 3, 2001, against S. Cohen and S. Cohen's alter ego entities for fraudulently converting the internet domain name www.sex.com. See Compl. ¶ 16; see also *Kremen v. Cohen*, 337 F.3d 1024, 1026-27 (9th Cir. 2003) (describing the facts giving rise to the Judgment and history between Kremen and S. Cohen relevant to this case); *Kremen v. Jhuliana Aramis Cohen*, No. 05-cv-01319-JM (POR), 2007 WL 1875779 (S.D. Cal. June 27, 2007) (same).

S. Cohen has resisted court orders and Kremen's attempts to exact payment on the Judgment. During the underlying litigation between Kremen and S. Cohen, S. Cohen failed to comply with a preliminary injunction order requiring the repatriation of $25 million from offshore accounts. See Pl.'s Request for Judicial Notice ("RJN") Ex. 15, ECF No. 158-7. S. Cohen fled to Mexico, where, in October 2005, he was detained and deported into the custody of the U.S. Marshal pursuant to an arrest warrant issued in March 2001 for S. Cohen's refusal to comply with various court orders. See RJN Ex. 4; RJN Ex. 6; Compl. at ¶ 18. In September 2005, Plaintiff brought an enforcement application, and the United States District Court for the Northern District of California found that seven individuals and twelve companies were acting in concert with S.

---

[1] Defendant FNB Pay has not moved for summary judgment, and has not appeared in this litigation. Default was entered against FNB Pay on March 14, 2012. ECF No. 83.

2
Case No.: 5:11-CV-05411-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   Cohen to evade enforcement of the Judgment and enjoined them from acting to interfere with

2   Plaintiff's rights thereunder. Pl.'s Opp'n to Def.'s First Mot. for Summ. J., ECF No. 76 ("Opp'n to

3   First MSJ"), at 4. On November 18, 2009, Plaintiff obtained a judgment and permanent injunction

4   against S. Cohen's step-daughter, Jhuliana Cohen; his ex-wife, Rosa Cohen; and his former

5   attorney, Gustavo Cortez, based on their participation in fraudulent transfers to assist S. Cohen's

6   attempts to conceal assets and avoid the Judgment. *Id.* at 4-5. On March 22, 2011, the United

7   States District Court for the Northern District of California renewed the Judgment against S. Cohen

8   in the amount of $67,867,053.36 ("Renewed Judgment"). *Id.* at 1-2.

9         Most recently, Plaintiff filed this action on November 8, 2011, seeking relief against M.

10  Cohen, who is S. Cohen's cousin, and against FNBPay, a corporation created by M. Cohen.

11  Plaintiff alleges that M. Cohen formed FNBPay to assist S. Cohen in funneling money through

12  various websites with the intent to conceal S. Cohen's assets from Plaintiff and avoid payment of

13  Plaintiff's Renewed Judgment. Compl. at ¶ 21. Plaintiff further alleges that S. Cohen has used M.

14  Cohen to conduct business through FNBPay on S. Cohen's behalf, and to open bank accounts in

15  M. Cohen's and/or FNBPay's name to transact business for the benefit of S. Cohen. *Id.* at ¶ 20. In

16  particular, Plaintiff asserts that deposits and withdrawals of funds into and out of a specific Wells

17  Fargo bank account (the "Wells Fargo Account"), opened by M. Cohen under the name FNBPay,

18  were the result of transfers made by, or at the direction of, S. Cohen. *Id.*

19        **B.**     **Procedural History**

20        Plaintiff filed this action on November 8, 2011. On December 2, 2011, Plaintiff filed an ex

21  parte motion seeking a temporary restraining order ("TRO") freezing certain assets "to prevent the

22  dissipation of more than $109,000 that is currently being held at Wells Fargo Bank . . . under the

23  name FNBPay" ("Wells Fargo Account"). ECF No. 5 at 2. This account is alleged to be the

24  vehicle for the alleged fraudulent transfers from S. Cohen. For good cause shown, the Court

25  granted the TRO on December 7, 2011, granted Plaintiff's request for limited expedited discovery,

26  and issued an Order to Show Cause ("OSC") setting a briefing schedule and hearing date on

27  Plaintiff's motion for a preliminary injunction enjoining Defendants from disposing of funds held

28  in the Wells Fargo Account. *See* ECF No. 16. The Court also requested supplemental briefing on

1   whether this Court had personal jurisdiction over Defendants and whether venue in this district was

2   proper. Defendants answered the OSC on December 20, 2011, and both sides submitted

3   supplemental briefing on personal jurisdiction and venue. Defendants also filed a motion to

4   dismiss for lack of jurisdiction and improper venue, or, in the alternative, a motion to transfer to the

5   District of Arizona pursuant to 28 U.S.C. § 1404. On January 7, 2012, the Court denied

6   Defendants' motion to dismiss or, in the alternative, to transfer. See ECF No. 68. Upon

7   introduction of evidence that the Wells Fargo Account at issue had in fact been closed in August

8   2011 with a closing balance of $0.00, the Court denied Plaintiff's motion for a preliminary

9   injunction for failure to show a risk of irreparable harm in the absence of an injunction, and

10  likewise dissolved the previously issued TRO on January 7, 2011. *See id.*

11  Defendant M. Cohen filed a motion for summary judgment on February 6, 2012. *See* ECF No. 72.

12  On April 2, 2012, S. Cohen filed a motion to intervene. *See* ECF No. 93. On July 17, 2012, this

13  Court denied the motion to intervene, and denied the motion for summary judgment under Federal

14  Rule of Civil Procedure 56(d). In denying the motion for summary judgment, the Court noted that

15  Plaintiff had not raised a genuine issue of material fact as to the existence of an actual transfer of

16  funds, as required by the UFTA. However, because discovery had not yet closed, Plaintiff was

17  entitled to complete discovery and attempt to oppose summary judgment on the basis of a fully

18  developed record. ECF No. 142. At a case management conference held on July 19, 2012, the

19  Court even extended the August 23, 2012 discovery deadline to October 4, 2012, to ensure that

20  Plaintiff had sufficient opportunity to gather evidence to oppose summary judgment. *See* ECF No.

21  143. M. Cohen then filed his renewed motion for summary judgment on October 15, 2012. ECF

22  No. 156. Plaintiff filed an opposition on October 29, 2012, ECF No. 158, and M. Cohen filed a

23  reply on November 13, 2012. ECF No. 163.

24  **II.     DISCUSSION**

25       **A.     Legal Standard**

26       Summary judgment is proper where "the pleadings, depositions, answers to interrogatories,

27  and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

28  any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.

4
Case No.: 5:11-CV-05411-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1     Civ. P. 56(c). A "genuine" dispute as to material facts exists only if there is sufficient evidence for
2     a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby,*
3     *Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court draws all
4     reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus.*
5     *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

6           The moving party has the burden of demonstrating the absence of a genuine issue of fact for
7     trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party
8     must either produce evidence negating an essential element of the nonmoving party's claim or
9     defense or show that the nonmoving party does not have enough evidence of an essential element
10    to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*
11    *Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). Once the moving party
12    has satisfied its initial burden of production, the burden shifts to the nonmoving party to show that
13    that there is a genuine issue of material fact. *Id.* at 1103. A party asserting that a fact is genuinely
14    disputed must support that assertion by either citing to particular parts of the record or by showing
15    that the materials cited by the moving party do not establish the absence of a genuine dispute. Fed.
16    R. Civ. P. 56(c). The nonmovant must go beyond its pleadings "and by her own affidavits, or by
17    the depositions, answers to interrogatories, and admissions on file, designate specific facts showing
18    that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks and
19    citation omitted). The nonmovant must submit sufficient evidence to establish a material factual
20    dispute, but he need not show the issue will be resolved conclusively in his favor. *Liberty Lobby*,
21    477 U.S. at 248-49 (citation omitted).

22        **B.**    **Analysis**

23          As in his previous motion, M. Cohen moves for summary judgment on the ground that
24    Plaintiff has failed to establish an essential element of his UFTA claim, namely that a transfer of
25    assets from S. Cohen to M. Cohen ever occurred. To prevail on his UFTA claims, Plaintiff has the
26    burden of proving the elements of a fraudulent transfer by a preponderance of the evidence. *In re*
27    *3dfx Interactive, Inc.*, 389 B.R. 842, 863-64 (Bankr. N.D. Cal. 2008) (citing *Whitehouse v. Six*
28    *Corp.*, 40 Cal. App. 4th 527, 604 (1995)). The UFTA provides that a transfer is fraudulent as to a

5

creditor if it is made with the actual intent to hinder, delay, or defraud any creditor of the debtor. Cal. Civ. Code § 3439.04(a)(1). In addition, a transfer is constructively fraudulent if it is made without the debtor receiving a reasonable equivalent value in exchange for the transfer at a time when the debtor was insolvent. Cal. Civ. Code § 3439.05. For a fraudulent transfer to occur, however, there must be a "transfer" of an "asset" as defined by the UFTA. *Fidelity Nat'l Title Ins. Co. v. Schroeder*, 179 Cal. App. 4th 834, 841 (2009). An "asset" includes any property of a debtor, except to the extent such property is encumbered by a valid lien. Cal. Civ. Code § 3439.01(a)(1). The UFTA defines "transfer" broadly as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Cal. Civ. Code § 3439.01(i).

In ruling on M. Cohen's previous motion for summary judgment, this Court found that "the circumstantial evidence of connections between Defendants, S. Cohen, and the activity in the Wells Fargo Account, even considered in light of the litigation history between Plaintiff and S. Cohen, [was] insufficient to raise a genuine issue of material fact as to the existence of an actual transfer of funds." ECF No. 142 at 8. In opposing M. Cohen's renewed motion, Plaintiff has presented much of that same evidence again. For the reasons stated in this Court's previous Order denying summary judgment, the mere transfer in and out of the Wells Fargo Account of various sums during specific time periods, without evidence that S. Cohen deposited them, cannot establish the required transfer. Evidence of S. Cohen's pattern of using family members to hide assets cannot change that fact.

However, in opposing this renewed motion, Plaintiff has also produced some new evidence not presented in opposing the previous motion. In particular, Plaintiff has pointed to a series of transactions involving two companies, Baja Datacenter and Medicina Mexico, made through an account in M. Cohen's name on the online payment processing site Paypal. Plaintiff has also

6
Case No.: 5:11-CV-05411-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

pointed to several other transactions involving Medicina Mexico but not involving the Paypal account, and to deposits to the Wells Fargo Account made by a man named Mario Saucido.[2]

As an initial matter, Plaintiff claims that any transfers not involving the Wells Fargo Account are outside the scope of what is alleged in the complaint, and therefore cannot form the basis for liability in this lawsuit. The Court need not decide whether the non-Wells Fargo transactions are within the boundaries of the claims stated in the complaint, because even if they are, Plaintiff has not raised a genuine issue of material fact as to whether any of these transactions were fraudulent transfers from S. Cohen to M. Cohen.

Specifically, Plaintiff has identified four types of deposits to the Paypal account that he alleges constitute transfers from S. Cohen to M. Cohen: (1) deposits from a credit card in S. Cohen's name totaling $22.55; (2) deposits from a credit card in the name of a company called Baja Datacenter totaling $845.00; (3) deposits from a company called Medicina Mexico totaling $25,359.48; and (4) deposits from Daniel Cohen totaling $1,960.00.

In addition to the Paypal transactions, Plaintiff claims that S. Cohen has transferred money to M. Cohen by using Medicina Mexico money to fund M. Cohen's legal defense in this matter, and by funding the purchase of domain names through Medicina Mexico. Finally, Plaintiff claims that funds transferred into the Wells Fargo account by a man named Mario Saucido were actually S. Cohen's funds, because Mario Saucido is "a business associate of S. Cohen's." Opp'n at 20. Taking all the evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact as to whether any of these transactions constituted a fraudulent transfer from S. Cohen to M. Cohen.

1. <u>Deposits from S. Cohen's Credit Card</u>

Plaintiff first argues that three deposits into M. Cohen's Paypal account – one for $11.60, one for $4.00, and one for $6.95 – constitute fraudulent transfers from S. Cohen to M. Cohen. Plaintiff has produced evidence that these three deposits were from a credit card held in S. Cohen's name. *See* Dillon Decl. at ¶ 17. Even assuming, as the Court must at summary judgment, that S.

---

[2] Plaintiff has also discussed at length transfers made *out* of M. Cohen's Paypal and Wells Fargo accounts. Though this evidence may be relevant to intent, it cannot establish the prerequisite of a transfer *from* S. Cohen *to* M. Cohen.

7

Case No.: 5:11-CV-05411-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Cohen did, in fact, make these three deposits totaling $22.55 to M. Cohen's Paypal account, it does not raise a genuine issue of material fact as to whether S. Cohen made transfers "with actual intent to hinder, delay, or defraud any creditor." Cal. Civ. Code § 3439.04(a)(1). Plaintiff is seeking to enforce a judgment exceeding $65,000,000. The suggestion that S. Cohen would attempt to "hinder, delay, or defraud" plaintiff out of just over $20 by transferring it to his cousin's Paypal account, when he owed such a significant amount and has surely spent significantly more already in his attempts to participate in this litigation, simply is not credible. Summary judgment is appropriate where what dispute there may be is not genuine, that is, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. No reasonable jury could find by a preponderance of the evidence that a fraudulent transfer occurred in the form of these three small deposits on the basis of this record. Accordingly, the three small deposits from this Visa card to M. Cohen's Paypal account do not raise a genuine issue of material fact.

2. Deposits from Baja Datacenter

Plaintiff's second argument is that a series of small deposits totaling $845.00 from a credit card held in the name of Baja Datacenter constitute fraudulent transfers from S. Cohen to M. Cohen. To begin with, though more than the $22.55 amount transferred from the S. Cohen credit card discussed above, this amount is similarly negligible when compared with the amount of the judgment Plaintiff is seeking to enforce. It would again be illogical to contemplate the concealment of $845.00 to avoid payment of a judgment in the eight figures.

Moreover, a transfer from Baja Datacenter is not, on its own terms, a transfer from S. Cohen. A transfer made not by the debtor himself but by a company he owns or controls may be a transfer for UFTA purposes only if the company is the alter ego of the debtor. *See Fleet Credit Corp. v. TML Bus Sales, Inc.*, 65 F.3d 119, 120 (9th Cir. 1995) (noting with approval district court's determination that transferor company was alter ego of debtor, allowing creditor to reach transferred assets). To establish that a company is an individual's alter ego under California Law, a party must prove "there is such a unity of interest and ownership that the individuality of such corporation and the owner or owners of its stock has ceased." *Mesler v. Bragg Mgmt. Co.*, 39 Cal.

8

1    3d 290, 299 (1985) (internal quotation marks and citation omitted). "Mere ownership of all the
2    stock and control and management of a corporation by one or two individuals is not of itself
3    sufficient to cause the courts to disregard the corporate entity." *Meadows v. Emett & Chandler*, 99
4    Cal. App. 2d 496, 499 (1950).

5    As an initial matter, Plaintiff has not pleaded that Baja Datacenter (or any other company) is an
6    alter ego of S. Cohen. California Courts have found this fact alone can justify summary judgment
7    on a claim that can only succeed on an alter ego theory. *See Leek v. Cooper*, 194 Cal. App. 4th
8    399, 416 (2011) (upholding trial court's grant of summary judgment where claim against
9    corporation could succeed only on alter ego theory not pleaded in complaint).

10   Moreover, the evidence Plaintiff has adduced that Baja Datacenter is an alter ego of S. Cohen is
11   not sufficient to raise a genuine issue of material fact. The evidence is as follows: (1) that S.
12   Cohen once presented himself as Baja Datacenter's representative in negotiating domain name
13   ownership, Dillon Decl. at ¶ 22; and (2) that the addresses used to register the domain name
14   bajadatacenter.com and used as the billing address for the credit card in Baja Datacenter's name are
15   also addresses for S. Cohen. *See id*. Even interpreted in the light most favorable to Plaintiff, these
16   two facts simply cannot establish the "unity of interest" required to treat Baja Datacenter's actions
17   as S. Cohen's actions. Thus, Baja Datacenter is not an alter ego of S. Cohen. Accordingly, there is
18   no triable issue of fact as to whether the Baja Datacenter deposits were transfers from S. Cohen to
19   M. Cohen.

20   3. <u>Deposits from Medicina Mexico</u>

21   Plaintiff's third argument concerns a more significant amount of money: deposits totaling
22   $25,359.48 made to M. Cohen's Paypal account tied to a company called Medicina Mexico. As an
23   initial matter, the evidence does not show that the relevant deposits were made by the company
24   Medicina Mexico. *See* Dillon Decl. at ¶ 40. Rather, the deposits appear to be payments made to
25   M. Cohen's Paypal account by customers making online purchases from Medicina Mexico,
26   facilitated by a payment service called osCommerce22. *Id.* Plaintiff has argued that "$25,359.48
27   was deposited into M. Cohen's PayPal Account based on Medicina Mexico's online pharmacy
28   sales." Dillon Decl. at ¶ 40; Opp'n at 7. But Plaintiff has not produced any evidence that the

transfer came from Medicina Mexico or from S. Cohen, rather than from the customers who made the purchases. Transfers from third-party customers to M. Cohen are not transfers from S. Cohen for UFTA purposes.

Even if the payments had come directly from Medicina Mexico, they would not, on the evidence Plaintiff has adduced, constitute transfers from S. Cohen. Like Baja Datacenter, Medicina Mexico is a business, and thus transfers from Medicina Mexico do not constitute transfers from S. Cohen unless Plaintiff is able to establish that Medicina Mexico is merely an alter ego of S. Cohen. Plaintiff has presented evidence that 98% of Medicina Mexico is owned by Baja Datacenter. *See* Dillon Decl. at ¶ 29. As this Court has found that Baja Datacenter is not, on the evidence adduced, an alter ego of S. Cohen, Baja Datacenter's ownership of Medicina Mexico cannot establish any relationship between S. Cohen and Medicina Mexico. Even if it could, mere ownership is not sufficient to establish an alter ego. *See Meadows*, 99 Cal. App. 2d at 499. This leaves only the 2% of Medicina Mexico, which Plaintiff claims is owned by S. Cohen. S. Cohen's ownership of 2% of Medicina Mexico cannot, even giving Plaintiff every possible benefit of the doubt, establish the "unity of interest" required to treat Medicina Mexico as an alter ego. Accordingly, the Court finds that there is no genuine issue of material fact as to whether the deposits allegedly for Medicina Mexico purchases were transfers from S. Cohen to M. Cohen.

4. <u>Non-Paypal Medicina Mexico transactions</u>

Beyond the Paypal account transfers, Plaintiff has also alleged that money from Medicina Mexico is funding M. Cohen's legal bills. This argument fails to establish a transfer for the same reason stated above: a transfer from Medicina Mexico is not a transfer from S. Cohen. Additionally, Plaintiff presents evidence that some domain names owned by Medicina Mexico were purchased using Baja Datacenter's and S. Cohen's credit cards. It is not clear how Plaintiff believes this constitutes a transfer from S. Cohen to M. Cohen, as it does not appear that M. Cohen received either funds or the domain names in these transactions. Thus, S. Cohen's funding of the purchase of domain names does not establish a genuine issue of material fact as to whether there was a transfer from S. Cohen to M. Cohen.

5. <u>Transfers from Daniel Cohen</u>

10

Case No.: 5:11-CV-05411-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff also argues that four transfers from Daniel Cohen, who is S. Cohen's son, to M. Cohen's Paypal account constitute transfers from S. Cohen to M. Cohen. Plaintiff has presented no evidence whatsoever that these transfers came from S. Cohen, rather than from Daniel Cohen. Accordingly, the Court finds that there is no genuine issue of material fact as to whether they were, in fact, transfers from S. Cohen.

6. <u>Transfers from Mario Saucedo</u>

Plaintiff claims that deposits to the Wells Fargo Account totaling $280.00, made by Mario Saucedo, are actually transfers from S. Cohen. Plaintiff's only evidence for this assumption is that Mario Saucedo had been making transfers to S. Cohen, and at some point stopped those transfers, and started making transfers to the Wells Fargo Account. Plaintiff has presented no evidence whatsoever to establish that the funds actually came from S. Cohen. The fact that Mario Saucedo made some transfers to S. Cohen does not establish that subsequent transfers to M. Cohen were actually being made by S. Cohen, rather than by Mario Saucedo. Moreover, Plaintiff has not presented any evidence aside from the bank transfers of the relationship between Mario Saucedo and S. Cohen or M. Cohen to substantiate his assertion that Mario Saucdeo is S. Cohen's business associate. Accordingly, these deposits cannot be transfers from S. Cohen for purposes of the UFTA.

In sum, Plaintiff has produced some evidence suggesting suspicious behavior on the part of S. Cohen and the various companies with which he appears to be involved. But as in Plaintiff's opposition to Defendants' previous summary judgment motion, Plaintiff has not adduced prima facie evidence of an actual fraudulent transfer of assets from S. Cohen to M. Cohen. To prevail under the UFTA, Plaintiff must prove that there was an actual transfer of assets from S. Cohen to M. Cohen, and that S. Cohen had actual or constructive intent to hinder, delay, or defraud Plaintiff. The only actual potential transfer of any kind Plaintiff has identified was for an amount so negligible in the context of the large judgment at issue here that there can be no genuine issue of fact concerning S. Cohen's intent in making that transfer.

Moreover, Plaintiff has had multiple opportunities to produce evidence to substantiate his allegations of fraudulent transfers, and has repeatedly failed to do so. In particular, the Court

11
Case No.: 5:11-CV-05411-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

denied Plaintiff's motion for a preliminary injunction when Plaintiff's allegations concerning the contents of the Wells Fargo Account made in seeking a temporary restraining order could not be substantiated. *See* ECF No. 68 at 18-19 (denying preliminary injunction). Further, rather than granting Defendants' first summary judgment motion when Plaintiff failed to produce evidence of fraudulent transfers, the Court allowed Plaintiff to complete additional discovery, and even extended the discovery deadline to ensure that Plaintiff had sufficient opportunity to marshal the evidence. *See* ECF Nos. 142 (denying summary judgment); 143 (extending discovery deadline). In opposing the present motion, rather than producing the necessary evidence to substantiate his original allegations about the Wells Fargo Account and FNB Pay, Plaintiff has resorted to a range of arguments he has never before presented, and which concern accounts and entities never mentioned in the Complaint or in any of his previous filings, a tactic which confirms that Plaintiff has not been able to locate any evidence to support his original claims.

Because Plaintiff has failed to meet his burden to raise a genuine issue of material fact as to whether there were actual fraudulent transfers to Defendants by S. Cohen, there can be no liability under California's Uniform Fraudulent Transfer Act. Though the Court is sympathetic to Plaintiff's desire to collect the remainder of his judgment, Plaintiff has demonstrated through repeated failure to prove his case that he simply does not have evidence of fraudulent transfers from S. Cohen to M. Cohen. Accordingly, M. Cohen's motion for summary judgment is GRANTED. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: January 2, 2013

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

12
Case No.: 5:11-CV-05411-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT